STATE OF NORTH CAROLINA v. CHARLES FRED WILLIAMSON

No. 8413SC433

(Filed 5 February 1985)

1. **Homicide § 31; Criminal Law § 138— second degree murder—sentence—factors in aggravation**

    Evidence in a second degree murder case was sufficient to support the trial court's finding in aggravation that the killing occurred after premeditation and deliberation where it tended to show that defendant's actions were unprovoked; he continued to fire his gun after his victim fell to the ground; the parties were involved in a bitter battle over visitation rights; and defendant told the victim after shooting her, "I told you I would get you."

2. **Homicide § 31; Criminal Law § 138— second degree murder—sentence—aggravating factor of violent propensities—sufficiency of evidence**

    Evidence was sufficient to support the trial court's finding in aggravation that defendant suffered from a mental condition which caused him to go into turmoil when faced with extreme stress and that he demonstrated a propensity to react with extremely violent acts which were dangerous to other people where defendant's own testimony was that he had previously assaulted his wife and hit a co-worker in the head with a bottle; a judge testified that defendant had a very bad reputation for violence and that, in all the cases he had been involved in with defendant, all the parties and witnesses had been afraid of him; and expert testimony by a forensic psychiatrist characterized defendant as tending to react in a very hostile manner when things did not go his way.

APPEAL by defendant from *Hobgood (Robert H.), Judge.* Judgment entered 20 April 1983 in Superior Court, COLUMBUS County. Heard in the Court of Appeals 17 January 1985.

Defendant was charged in a proper bill of indictment with murder in the first degree. In exchange for the State's agreement to reduce the charge to murder in the second degree, defendant agreed to enter a plea of guilty. The matter came on for sentencing on 18 April 1983, and Judge Hobgood found the following factors in aggravation:

    15. The defendant has a prior conviction or convictions for criminal offenses punishable by more than 60 days' confinement.

    16. Additional written findings of factors in aggravation: The killing occurred after the Defendant premeditated and deliberated the killing.

17. The Defendant suffers from a mental condition which when faced with a crisis with extreme stress his mind goes into a turmoil and he has demonstrated a propensity to react with extremely violent acts which are dangerous to other persons.

The court also found factors in mitigation. Upon finding that the factors in aggravation outweigh the factors in mitigation, the court imposed a prison sentence of twenty-five years, which exceeds the presumptive term established by N.C. Gen. Stat. Sec. 14-17. Pursuant to the provisions of N.C. Gen. Stat. Sec. 15A-1444(a1), defendant appealed.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Roy A. Giles, Jr., for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender Lorinzo L. Joyner, for defendant, appellant.*

HEDRICK, Chief Judge.

[1] Defendant first assigns error to the court's finding in aggravation that "[t]he killing occurred after the Defendant premeditated and deliberated the killing." Defendant contends that this finding is not supported by a preponderance of the evidence, as is required by N.C. Gen. Stat. Sec. 15A-1340.4(b).

Our Supreme Court has discussed many times the meaning of the terms "premeditation" and "deliberation." In *State v. Corn,* 303 N.C. 293, 278 S.E. 2d 221 (1981), the Court said:

Premeditation has been defined by this Court as thought beforehand for some length of time, however short. No particular length of time is required; it is sufficient if the process of premeditation occurred at any point prior to the killing. [Citations omitted.] An unlawful killing is committed with deliberation if it is done in a "cool state of blood," without legal provocation, and in furtherance of a "fixed design to gratify a feeling of revenge, or to accomplish some unlawful purpose." [Citations omitted.]

*Id.* at 297, 278 S.E. 2d at 223. The Court went on to say

Since premeditation and deliberation are processes of the mind, they are not susceptible to direct proof and must

almost always be proved by circumstantial evidence. Among the circumstances which may be considered as tending to prove premeditation and deliberation are: lack of provocation by the deceased; defendant's acts and comments before and after the killing; the use of grossly excessive force or the infliction of lethal blows after the deceased has been felled; and any history of altercations or ill will between the parties.

*Id.*

In the instant case the evidence tended to show the following: the relationship between defendant and the victim, Joan Powell Williamson, began in 1970 and was characterized by tumult and conflict. Mrs. Williamson was married to Joe Powell when she met the defendant, and the subsequent affair between the victim and defendant prompted repeated threats from Mr. Powell. On one occasion defendant shot Mr. Powell's brother in the leg. Defendant was prosecuted for the offense and found to be not guilty by reason of self-defense. On another occasion defendant and the victim became involved in an argument, terminating when the victim shot defendant with a .22 caliber rifle. Mrs. Williamson was not prosecuted for this offense. In January, 1981, the victim's divorce became final, and she and the defendant were married. In February defendant and his wife had a daughter.

Shortly after their marriage in January, the relationship between defendant and his wife deteriorated, and they separated. Mrs. Williamson obtained a divorce from bed and board and began to date another man. Defendant argued with Mrs. Williamson about visitation with his daughter. Mrs. Williamson accused defendant of burning down her tobacco barn. In the fall of 1981 defendant entered a drug and alcohol program in Texas. Four months later, he telephoned the victim, and the two began to discuss reconciliation.

In March, 1982, defendant returned to Columbus County. He again experienced difficulty in seeing his daughter, and retained an attorney. A hearing on the matter was scheduled for 23 April, and was continued to 30 April 1982. Between 23 April and 30 April both defendant and his sister received phone calls from Mrs. Williamson in which she threatened the defendant. Defendant spoke to several persons about his fear of the victim.

On 30 April 1982 defendant attended the hearing to determine his visitation rights with his daughter. Following a conference defendant was told that he would be permitted to visit the child at his mother's home, an arrangement to which he had strong objections. Court recessed for lunch, at which time defendant obtained a gun from his brother-in-law and put it in the car glove compartment. After lunch court reconvened; defendant became visibly upset during his testimony, following which Judge Wood told defendant he would be permitted visitation rights only at his mother's home. Shortly after the hearing Joan Williamson and her attorney were walking together on the street when defendant ran up to them, pulled a gun, and fired five shots. When he fired the last two or three shots, defendant was bending over the victim. As he fired, defendant stated, "I told you I would get you." We think it abundantly clear that this evidence, particularly considered in light of the factors discussed in *Corn*, supports the court's finding that defendant acted with premeditation and deliberation in killing Joan Williamson. The evidence tends to show that defendant's actions were unprovoked, that he continued to fire after his victim fell to the ground, and that the parties were involved in a bitter battle over visitation rights. Defendant's statement that "I told you I would get you," is additional evidentiary support for the court's finding. This assignment of error is without merit.

[2] Defendant next challenges the sufficiency of the evidence to support the court's finding that

> The Defendant suffers from a mental condition which when faced with a crisis with extreme stress his mind goes into a turmoil and he has demonstrated a propensity to react with extremely violent acts which are dangerous to other persons.

Defendant contends that "aside from his having shot and killed his wife, the evidence does not support a finding of a propensity to react violently or dangerousness to others." We disagree. Defendant's own testimony was that he had previously assaulted his wife and hit a co-worker in the head with a bottle. Judge Wood testified that "Mr. Williamson has a very bad reputation for violence. In all of the cases that I have been involved in with him, all of the parties and witnesses have all been afraid of him." Expert testimony by Dr. Bob Rollings, a forensic psychiatrist,

characterized defendant as tending to react "in a very hostile manner" "when things don't go [his] way." In response to questioning about whether defendant is "a dangerous person," Dr. Rollings said:

> Well, he certainly has been on more than one occasion in the past. And given the same kind of circumstances, the probability of dangerous behavior would be pretty significant I would think.

We think the evidence before the judge supports the challenged finding of the factor in aggravation.

Affirmed.

Judges WHICHARD and PARKER concur.